JOHN HAVEN *vs.* GEORGE HAVEN, executor, & others.

Suffolk.    March 19, 1902. — June 17, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, & BARKER, JJ.

*Evidence*, Of foreign law.    *Joint Owners and Owners in Common.    Perpetuities. Heirlooms.    Equity Pleading and Practice*, Parties.    *Limitations, Statute of*, Special of two years.    *Words,* "Joint owners."

A dictum of the highest court of another State is evidence of the law of that State. The will of Ann Haven, of New Hampshire, who died there in 1849, contained the following provision: "It is also my will that the portraits of my late husband and of myself, which were painted by Stuart, shall remain in the mansion house, the use of which was bequeathed to me by my late husband during my life, so long as any of my lineal descendants shall occupy the same; and when said house shall cease to be occupied by any of my said descendants, I give said portraits to such of my four sons as shall then be alive, and if none of them shall then survive, I give said portraits to the male descendants of my said sons." The house continued to be occupied by lineal descendants of Ann Haven until some time in 1895, and apparently until 1898, up to which time the portraits remained there.    In 1896 a petition was filed in the Probate Court in New

Hampshire in which Ann Haven's estate had been settled, praying for the appointment of an administrator *de bonis non* of her estate on the ground that the portraits were unadministered assets. This case came by appeal and reservation to the full bench of the Supreme Court of New Hampshire, who affirmed a decree dismissing the petition and declared in the opinion of the court, that "The rights of parties in the portraits furnish no occasion for further administration of Ann's estate. The only parties having such rights are the plaintiff, the defendant, and George G. Haven, who are tenants in common of the portraits." The three persons thus designated were the male descendants of the sons of Ann Haven, all of those sons being dead. The same plaintiff filed a bill in equity in this Commonwealth under St. 1891, c. 383, praying the court to order a sale of the portraits and a proper disposition of the proceeds. A demurrer to the bill was overruled. *Held,* that the demurrer was overruled rightly and that the plaintiff was entitled to the order prayed for; that, although the portion of the above quoted opinion in regard to the title to the portraits might be *obiter dictum,* it was evidence of the law of New Hampshire, and disposed of the case, so that it was not necessary for this court to consider, whether under our law the gift to the male descendants of the four sons would be valid, or whether the direction, that the portraits should remain in the mansion house so long as it was occupied by any of Ann Haven's lineal descendants, could be supported as a disposition of the portraits as heirlooms. *Held, also,* that the plaintiff was guilty of no laches, as the decision of the Supreme Court of New Hampshire gave full effect to the clause giving the portraits to the male descendants of the four sons, and by that clause the plaintiff and the other two male descendants did not become entitled to the possession of the portraits until the mansion house had ceased to be occupied by a lineal descendant of Ann Haven, and there was nothing to show laches since that time, or to show that if there had been delay the defendant was prejudiced by it. *Held, also,* that it was not necessary, that the legatees, distributees and heirs at law of the children of Ann Haven should be made defendants, the executors and administrators of the estates of those children having been made defendants and representing them.

A bill in equity under St. 1891, c. 383, praying for a sale of personal property owned in common and a proper disposition of the proceeds, is not barred by the special statute of limitations set up by the executor of one of the owners in common. Such a proceeding is not to enforce a claim or liability against the estate, but to determine the rights, if any, of various parties and estates in the property in question.

In St. 1891, c. 383, providing for the determination of "all questions and controversies arising between joint owners of personal property, and their legal representatives, relating to such property", the words "joint owners" include owners in common.

MORTON, J. This is a bill in equity under St. 1891, c. 383, for the sale of two portraits of John Haven and his wife, Ann Haven, and the distribution of the proceeds. The principal question at issue is the title to the portraits. There was a motion to dismiss for want of proper parties, and a demurrer, for that and other reasons, by George Haven. Both were overruled and he appealed. An answer was filed by him denying

generally the allegations of the petition, and setting up in his capacity as executor of the will of George Wallis Haven, the special statute of limitations as a bar. Subsequently a statement of facts was agreed to by him and the plaintiff. All the other defendants, except in a single instance, have answered waiving proof of the facts alleged in the petition and agreed to by the plaintiff and the defendant George Haven, and submitting their rights to the determination of the court. The exception referred to is in the case of Katharine M. and Eliza B. Haven, who " do not admit the jurisdiction of the Supreme Court of New Hampshire sitting in probate . . . to adjudicate upon any right which they may have in the portraits." In respect to all other matters alleged in the petition, they submit their rights to the determination of the court. The case was reserved by a single justice for the full court upon the pleadings, the agreed statement of facts, and the appeals from the orders overruling the motions to dismiss and the demurrer.

It appears from the agreed facts, that for many years previous to his death John Haven owned and occupied a mansion house in Portsmouth, New Hampshire. He died in 1845 and bequeathed the portraits to his wife, Ann Haven, with a life estate in the mansion house, and the remainder to his four sons John Appleton Haven, the father of the plaintiff, Joseph Woodward Haven, Alfred Woodward Haven and George Wallis Haven the father of the defendant George Haven. His widow occupied the mansion house till her death in 1849. Prior to her death George Wallis Haven had purchased the interest of his three brothers in the mansion house and after her death he occupied it till his death in 1895. He devised the mansion house to his widow for life with remainder to his son George Haven aforesaid. The widow occupied till her death in 1898. From the death of John Haven in 1845 down to the death of the widow of George Wallis Haven in 1898 the portraits hung in the parlor of the mansion house. Till 1895 they hung there without any express agreement. The plaintiff has frequently seen the portraits there, " but never made any claim to them until after George W.'s death ", and " there was no direct evidence, one way or the other," if that is material, " as to when he first learned of the provisions of Ann's will." Shortly after the death of the widow of George

Wallis Haven in 1898 the portraits were removed by the defendant George Haven to Boston where they now are. The mansion house has been sold and has ceased to be occupied by lineal descendants of Ann Haven.

The will of Ann Haven provided amongst other things as follows: " Sixth. It is also my will that the portraits of my late husband and of myself, which were painted by Stuart, shall remain in the mansion house, the use of which was bequeathed to me by my late husband during my life, so long as any of my lineal descendants shall occupy the same; and when said house shall cease to be occupied by any of my said descendants, I give said portraits to such of my four sons as shall then be alive, and if none of them shall then survive, I give said portraits to the male descendants of my said sons.

" Seventh. All the rest, residue and remainder of my estate, after the payment of my just debts and the legacies aforesaid, I give, devise and bequeath to my seven children John Appleton Haven, J. Woodward Haven, Alfred W. Haven, George W. Haven, Eliza W. Haven, Adeline H. Cheever, and Susan H. Emerson to be holden by them in equal shares."

None of the children of Ann Haven were alive when this bill was filed, and none of the four sons were alive when the mansion house ceased to be occupied by her lineal descendants.

In 1896 the plaintiff petitioned the Probate Court of Rockingham County, New Hampshire, in which the estate of Ann Haven had been settled, for the appointment of an administrator *de bonis non*, etc., on the ground that the portraits were unadministered assets. Due notice of the pendency of this petition was given and the defendant appeared and opposed it, and it was dismissed. An appeal was taken to the Supreme Court. The decree was affirmed by that court. The presiding justice made a finding of facts and reserved the case on the plaintiff's exceptions for the full bench. The full bench overruled the exceptions. It is agreed that that case may be referred to, and in the opinion by *Blodgett*, J. it is said, " The rights of parties in the portraits furnish no occasion for further administration of Ann's estate. The only parties having such rights are the plaintiff, the defendant, and George G. Haven, who are tenants in common of the portraits."

The executors and administrators of the children of Ann Haven are parties defendant except in a single instance, and the male descendants of the four sons have also been made parties defendant in their own right. The single exception is in the case of Alfred Woodward Haven who died testate in 1885 leaving a widow and two daughters. The widow was appointed executrix and took all the property for life with remainder to the two daughters who are parties defendant and have appeared and answered as above stated. The widow is dead and no administrator has been appointed to succeed her. The time for proof of claims against the estate has long since passed.

The only one of the defendants who has contested the present bill is George Haven and we shall speak of him as the defendant.

The plaintiff contends the effect of the New Hampshire decision is to establish that the title to the portraits is in himself, the defendant and George Griswold Haven the son of J. Woodward Haven. It is agreed that " It was, by the opinion of said court [the full bench of the Supreme Court of New Hampshire] finally adjudicated that the only persons having rights in said portraits were said George Haven, George Griswold Haven, and the petitioner, who were tenants in common of the portraits." The defendant denies that the decision and the facts agreed in regard to the overruling of the exceptions are competent evidence ; at least that is the way in which we interpret the sentence in the agreed facts relating to the matter. But it is clear that although so much of the opinion as relates to the title to the portraits may be *obiter dictum* and therefore the title may not be *res adjudicata*, it is evidence of what the law of New Hampshire is. *Hackett* v. *Potter*, 135 Mass. 349. *Sawyer Lumber Co.* v. *Boston & Albany Railroad*, 173 Mass. 502. It is plain that the courts of New Hampshire had jurisdiction of the *res.* Indeed, it is not contended by the defendant that they had not. And in view of the agreement as to the effect of the decision if the facts in regard to it are competent, as we think they are, it follows it seems to us that the plaintiff's contention is right. This renders it unnecessary to consider whether under our law the gift to the male descendants of the four sons would be valid, or whether the direction that the por-

traits should remain in the mansion house so long as it was occupied by any of Ann Haven's lineal descendants could be supported as a disposition of the portraits as heirlooms, as the defendant contends it can. In regard to this contention it may be observed that assuming that under our law as under the English law, see *Hill* v. *Hill*, [1897] 1 Q. B. 483, personal chattels may be disposed of by will so as to pass with the realty as heirlooms or as fixtures in the nature of heirlooms, there is no intention manifested that the title to or even the possession of the portraits should pass with or accompany the title to the mansion house. It is also unnecessary to consider the defendant's contention that he has acquired title to the portraits by adverse possession.

The defendant further contends as executor of the will of George Wallis Haven, that the petition is barred by the special statute of limitations. But this is not a suit or proceeding to enforce a claim or liability against that estate, but to determine the rights, if any, of various parties and estates in the property in question, and what shall be done with it. It does not therefore come within the purview of the special statute of limitations. The defendant also objects that the legatees, distributees and heirs at law of the children of Ann Haven should have been made parties defendant, and that this is matter of jurisdiction. Assuming that the objection is jurisdictional the answer is that the executors and administrators were the successors in title and they have been made parties defendant. In the single instance in which there is no executor or administrator nothing would be gained by requiring the appointment of one. The motion to dismiss was therefore properly overruled. The defendant further objects that St. 1891, c. 383, is not applicable for the reason that the ownership set forth is not a joint ownership but a tenancy in common. But we think that the words of the statute on which he relies, " joint owners of personal property ", describe an ownership where the property belongs or may belong to two or more persons in undivided shares, and are not limited to cases where there is a joint tenancy in the strict and technical sense of those words. The exception in regard to copartners and copartnership property tends to show that this is the true construction, since copartners are not in the strict sense of the

words joint tenants, and the provision in regard to " legal representatives " also tends in the same direction.   An executor or administrator takes no title to the joint estate on the death of a joint tenant.   And the fact that the rights of " legal representatives " are provided for goes to show that the words " joint owners" could not have been used in their strict and technical sense.

The defendant objects still further that the plaintiff is barred by laches.   But apparently the Supreme Court of New Hampshire has given full effect to the clause of the will giving the portraits to the male descendants of the four sons, and under that clause the plaintiff and defendant and George Griswold Haven did not become entitled to the possession of the portraits till the mansion house ceased to be occupied by lineal descendants of Ann Haven.   Since that event happened there is nothing to show that there has been any laches on the part of the plaintiff or that the delay if delay there has been has operated in any way to the prejudice of the defendant.   See *Barnes* v. *Boardman*, 149 Mass. 106 ; *Tucker* v. *Fisk*, 154 Mass. 574.

The result is that we think that the demurrer was rightly overruled and that the plaintiff is entitled to an order directing the portraits to be sold and the proceeds distributed between himself, the defendant and George Griswold Haven.

*So ordered.*

*R. S. Gorham & Roland Gray*, for the plaintiff.
*H. Parker & H. H. Fuller*, for George Haven.