JESSE ROSENSTEIN AND ISIDOR ROSENSTEIN,
Co-Partners, Trading as Rosenstein Piano
Company, vs. CHARLES F. ZENTZ.

Contracts for personal services: injunction to enforce—; to
prevent breach; value and character of service; wages
as evidence. Employer and employee: information
acquired in course of employment.

An injunction will not be granted to restrain one under a con-
tract for personal services from rendering services to another
in violation of the contract, when the bill does not show that
the duties required of the defendant by the contract were
unique and extraordinary, requiring peculiar and marked
ability to prosecute them successfully.          p. 574

The rate of wages provided in the contract of employment may
be considered in determining whether the services were of
such an extraordinary character as to warrant the issuing
of an injunction.                                p. 575

An allegation in the bill that the defendant had "the particular
run of a class of trade in the employ of" the complainant, is
not sufficient for such a purpose.               p. 575

The fact that the employee in a new employment profits by the
experience and knowledge gained from his services with a
former employer, does not, in the absence of any special or
implied contract, constitute a legal wrong against the latter.
                                                 p. 575

A. was employed under a written contract as a salesman, col-
lector and general utility man for a dealer in pianos and
other musical instruments, for a certain territory; he was
to devote his whole time to the performance of such duties,
and the contract contained the negative agreement that he
should not enter into any contract of employment or be in
any way interested or connected with any one other than the
said dealer, in said territory, during one year, in similar
employment; the compensation provided was $15.00 per week.

A bill was filed against him, with a prayer for relief that he be enjoined from engaging himself as salesman, etc., within that territory with another firm in such business. The bill itself failed to allege that the defendant had entered a similar business or that he had engaged his services within the prohibited territory; on appeal from an order refusing the injunction *it was held* that upon the statement of all the facts and pleadings the injunction should not issue.

p. 575

*Decided November 13th, 1912.*

Appeal from the Circuit Court for Baltimore City (STUMP, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Augustus C. Binswanger,* for the appellant.

*Israel B. Brodie,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, defendant below, entered into a written agreement with the appellants, dated March 11th, 1912, by which he was to enter into the services of the appellants, who were engaged in the sale of pianos and other musical instruments, for the period of one year from the date of the agreement. His employment, as expressed in the contract, was to embrace the States of Maryland and Virginia and the District of Columbia, and his duties were those of salesman, collector and general utility man, and he was to devote the whole of his time to the performance of such duties. In the agreement is found the negative covenant that "He will not enter into any contract or employment or be in any way interested or connected with any one, other than the said merchants, in said territory, during said period of one year,

in similar employment," etc. The contract or agreement contained the further provision that "The services of said salesman are engaged during the working hours of the day and when necessary during the night." His compensation named therein was fifteen dollars per week, payable weekly, from the commencement of his services, accounting from March 16th, 1912.

The bill of the appellants, filed March 13th, 1912, charges that the said defendant, subsequent to two o'clock on March 9th, 1912, the time when the contract between the plaintiffs and defendant is said by the plaintiffs to have been executed, entered into a written contract of employment with the Hub Piano Company, and at the time of entering into this contract and prior to the signing of it, the contract previously made with them by the defendant was exhibited to the members of the firm of the Hub Piano Company. And they further charge that at the time of the filing of their bill the defendant was in the employ of the Hub Piano Company, in breach of the covenants contained in their written contract with him and "in fraud of their rights" thereunder.

The bill further discloses that prior to the fifteenth day of February, 1912, the plaintiffs with Rachel Rosenstein and the members of the firm thereafter composing the firm of the Hub Piano Company were conducting department stores in the City of Baltimore under the firm name of L. Rosenstein & Sons, and that the plaintiffs with the members of the firm of the Hub Piano Co., as thereafter formed, also conducted a piano and musical instruments business in said city under the firm name of Rosenstein & Bros. That differences and disagreements as to the conduct of the business arose among the different members of the firms as they then existed. These differences and disagreements were submitted to arbitration, and by the award it was provided that the piano business and piano accounts of the firm were to be sold and disposed of to the member or members of the firms who would pay the most therefor, and when sold, the purchaser or purchasers should be entitled to the good-will of said firms in so far as

the same related to the piano business, and the unsuccessful bidders and members of the old firm not among the purchasers were not to deal or attempt to deal with any of the existing customers of the said firms, either directly or indirectly, nor were they in any manner to seek to supplant with other musical instruments the instruments at that time held by the customers of the old firms. Under these provisions of the award the plaintiffs became the purchasers of the piano business and the piano accounts of said firm. The defendant was in the employ of the old firm at the time of its dissolution, and as allged in the bill, "had the particular run of a class of trade in the employ of the said two firms."

The prayer of the bill asks that the defendant be restrained from engaging, either directly or indirectly, at any time within one year from March 11th, 1912, within the territory heretofore mentioned, as salesman, collector and general utility man in and about the piano or other musical instrument business. A preliminary injunction was issued as prayed and a demurrer to the bill was thereafter filed. By an order of Court passed on the 8th day of April, 1912, the preliminary injunction was dissolved, the demurrer to the bill sustained and the bill dismissed. It is from this order that this appeal is taken.

We have been referred to no case in Maryland nor have we been able to find one where the law applicable to the facts of this case has been stated. The first case before this Court where an attempt was made to restrain an employee, under a contract for personal services, from rendering service to another in violation of such contract, was the case of *Burton v. Marshall*, 4 Gill, 487. In that case Charles Burke made a contract for and on behalf of his wife that she should perform at the Holliday Street Theatre, Baltimore, Maryland, of which the appellant was the manager, for the period of time and at the salary therein named. There was no negative covenant in the contract that she should not, during that time, perform at any other theatre. As alleged in the bill of the appellants, in violation of her contract the husband

refused to permit his wife to perform at said theatre, and engaged her services to a rival company, of which Burton was the manager. The bill also discloses that the complainant had brought an action at law to recover damages because of the breach of the contract. The prayer of the bill asked, among other things, that Margaret Burke be restrained from performing as an actress in any other theatrical corps during the continuance of said contract, etc. This Court in that case held that the injunction should have been refused because oppressive when considered in connection with the suit at law then pending, saying, "Equity will not listen to a complainant who thus presents himself for relief, until he makes his election in which Court he desires to proceed in pursuit of his rights, and has dismissed, or agreed to dismiss, his proceedings in the other."

This Court in its opinion in that case referred to the cases of *Kemble v. Kean,* 6 Simons, 333, and *Kimberley v. Jennings,* 6 Simmons, 340. In those cases the contracts were for personal services and each contained an affirmative and a negative covenant. The Court was asked to restrain the employee from rendering services to one other than the plaintiff in violation of his contract with the plaintiff. The Court there held that it could not enforce the positive part of the contract, and therefore it would not restrain by injunction a breach of the negative part.

The Court in its reference to these cases did not approve or disapprove of the principle of law laid down in them, but simply said: "If these cases are to be regarded as of any authority, upon what principle could the complainant, under a contract affirmative in all its provisions, and the execution of which could not be specifically enforced, ask a Court of Equity, in effect, to engraft upon it a negative stipulation, the breach whereof was to be restrained by injunction, as if it had formed a part of the written agreement of the parties?"

The next case we find in this Court involving the right under a contract for personal services to restrain the violation of the covenants therein, is that of *Hahn* v. *Concordia Society,* 42 Md. 460, which, unlike the case of *Burton* v. *Marshall,* contained an express negative stipulation that the defendant would not do that which the injunction prohibited him from doing. By the agreement in the case of *Hahn* v. *Concordia,* the appellees engaged the defendant, an actor, for the time therein mentioned, at a monthly salary, and he was not during the time for which he was employed to act in any other theatre without the express permission in writing from the appellees. The agreement also contained the stipulation to the effect that, if the defendant should break it, he should pay to the appellees a conventional fine of two hundred dollars, which sum was to be forfeited in any violation of the contract and required no legal proceedings for its execution. The Court, after briefly alluding to the decision in the case of *Kemple* v. *Kean,* referred to and quoted from the case of *Lumley* v. *Wagner,* 1 DeG., Mac. & G. 604, which expressly overrules the cases of *Kemble* v. *Kean* and *Kimberley* v. *Jennings,* and which was decided after the case of *Burton* v. *Marshall.* This Court, in speaking of the case of *Lumley* v. *Wagner,* said: "By this decision we understand the law to be now settled in England that, though a Court of Equity can not enforce the specific performance of a contract for the rendition of mere personal services, yet it will not hesitate to interfere by injunction to prevent the violation of a negative stipulation, where the terms and nature of the contract are similar to those in that case. In this country, the authorities, and especially those in New York, of *Hamblin* v. *Dinneford,* 2 Edw. Ch. Rep. 529, and *Sanquirico* v. *Benedetti,* 1 Barb. 315, appear to have followed *Kemble* v. *Kean* and have denied the relief. In fact, we have not been referred to, nor have we found, any American decision in which an injunction has in a like case been sustained." The Court then proceeded to say: "But in our judgment the

present case does not require us to decide this important jurisdictional question." The Court then, upon entirely different grounds from those it had been discussing, reversed the Court below and dismissed the bill.

This is the last case in this Court that we have been able to find, or to which our attention has been called, involving the rights of an employer, under a contract for purely personal services, to restrain the employee from a breach of a negative covenant in the contract of employment. In other jurisdictions, however, the rights of employers in such cases have since been frequently heard and determined, and the law governing such cases is also found in the works of the text writers covering this branch of the law.

*Page on Contracts,* Vol. 3, section 1644, in summarizing the law applicable to cases of this character, says: "If the executory covenants are in part affirmative ones which can not be enforced by specific performance, and in part negative ones, the question whether Equity will grant relief against breach of the negative covenants by injunction is one on which there is conflict of authority. The cases in which this question is presented are usually cases of contracts for personal services. The original rule in this country seems to have been that equity would grant no relief, affirmative or negative, in contracts for personal services, even if there was an express negative covenant. Modern Courts have, however, receded somewhat from this extreme and uncompromising position. In some cases it has been held that if the services contracted for are unique in character and if by reason of special knowledge, skill, ability or reputation of the party rendering them it is difficult for the adversary party to provide a substitute therefor, equity will give an injunction against the breach of a negative covenant by the employee not to render services to any other person during his term of employment. Thus an injunction has been given against breach of a contract by an actor (*Lumley* v. *Wagner,* 1 DeG., M. & G. 604), or baseball player (*Philadelphia Ball*

*Club* v. *Lajoie,* 202 Pa. St. 210, 217), each of peculiar ability and great reputation.  * * *  If the services contracted for are not of a unique or extraordinary character, equity will not enjoin the employee from accepting other employment during his term."

In the case of *Wm. Rogers Manufacturing Co.* v. *Rogers,* 58 Conn. 356, 7 L. R. A. 779, the defendant agreed that he would serve the plaintiffs for a stipulated time under the direction of their general manager, traveling for them as directed, and rendering such services in the capacity of secretary or other officer as they might desire; and that he would not be engaged, or allow his name to be used, in any other hardware or cutlery business, either as manufacturer or seller, but would give his entire time and services to the interest of the plaintiffs.  In a suit to restrain the defendant from a breach of such negative covenant, the Court there said: "The Courts in this country and in England formerly held that they could not negatively enforce the specific performance of such contracts by means of an injunction restraining their violation.  The Courts in both countries have, however, receded somewhat from the latter conclusion, and it is now held that where a contract stipulated for special, unique or extraordinary personal services or acts, or where the services to be rendered are purely intellectual, or are peculiar and individual in their character, the Court will grant an injunction in aid of a specific performance.  But where the services are material or mechanical, or are not peculiar or individual, the party will be left to his action for damages.  The reason seems to be that services of the former class are of such a nature as to preclude the possibility of giving the injured party adequate compensation in damages, while the loss of services of the latter class can be adequately compensated by an action for damages."  And the Court in that case, in speaking of the character of services to be rendered by the defendant, said: "These services, while they may not be material and mechanical, are certainly not purely

individual, nor are they special or unique or extraordinary; nor are they so peculiar or individual that they should not be performed by any other person of ordinary intelligence and fair learning." The Court thus sustained the judgment of the lower Court in refusing to grant the injunction.

The defendant in the case of the *Jaccard Jewelry Co.* v. *O'Brien*, 70 Mo. Ap. 432, was a salesman for that company under a contract to receive twenty dollars per week and one-half per cent. on all sales made by him, for a period of one year. The contract contained a negative covenant by which he was not to engage in like services for any one else during that time. In that case an injunction was asked for to restrain the defendant from a breach of his negative covenant, which was refused, and upon appeal the Court in that case, in sustaining the lower Court, after referring to both the cases of *Kemble* v. *Kean* and *Lumley* v. *Wagner,* said of the *Lumley case,* that it had received only a qualified endorsement by the Courts of this country, "that is, to the extent that if the services contracted for are purely intellectual and personal in their character, such as the services of authors or actors, or if the services are mechanical and material, but which require unusual skill and practice, they are held to form a class, and a Court of Equity will interfere to restrain the breach of a contract for such services, upon the ground that the services are unique, individual and peculiar. When such a contract is broken, the same service is not readily or easily obtainable from others, and the resulting damage is irreparable, in that it can not be estimated. This forms the basis for the exercise of equitable jurisdiction."

And again in the case of *Gossard Co.* v. *Crosby* (Iowa), 109 N. W. 483, 6 L. R. A. (N. S.) 1115, the plaintiff corporation, wholesale and retail dealers in ladies' corsets, and in the importation and sale of trimmings, laces, silks and dress furnishings, whose business was largely carried on by and through the agency of traveling representatives, contracted with the defendant whereby she was to work for the

plaintiffs for a period of three years as corset saleswoman and demonstrator. As alleged in the bill, her work involved the necessity of lectures pertaining to the physical culture of woman and the proper corsage to secure to her health, comfort and physical beauty, and at the same time exhibiting the many advantages of the corsets as adding to her physical beauty, and alleged in their petition for an injunction that such services were special, unique and extraordinary in their character, and called for a person of high mental culture and refinement, of strong and pleasing individuality, good address, prepossessing appearance, striking and pleasing development, possessing a knowledge of physical culture, and ability as a lecturer, etc., which attainments and qualifications the bill alleged the defendant possessed in a marked degree. The Court there said: "Even where there is an express negative covenant, injunction will not be granted save in these exceptional cases where, by reason of the peculiar or extraordinary character of the promised service, a violation of the agreement will cause injury to the other party for which an action at law will afford no adequate remedy." In that case the Court held that although the petition alleged that the services to be performed by the defendant were unique and extraordinary, requiring peculiar and marked ability to prosecute them successfully, that it was but the statement of a conclusion and was not supported by the facts, and the Court sustained the lower Court in its refusal to grant the injunction. The Court, in discussing that case, also said: "The mere fact that she may not be financially responsible is not alone any reason for invoking equity in any case."

In 22 *Cyc.* page 857, we find the law governing such cases to be, that in the case of contracts to render services requiring no special skill or qualification, the rule still holds that a breach by an employee will not be enjoined, even though he has expressly agreed to work for no one else or to devote all his time to the services of the complainant; but the reason for this is that other employees can be found to do the work,

and damages at law are adequate compensation for the breach
of the contract. Upon this general proposition the Courts
are substantially agreed, but variations will be found in
determining whether certain positions do or do not require
special qualifications. *Cort* v. *Lassard & Lucifer,* 18 Ore.
221; *Simms* v. *Burnette,* 55 Fla. 702; 15 *A. & E. Anno.
Cases,* 690; *Hammond* v. *Georgian Co..* 133 Ga. 1; *Kessler &
Co.* v. *Chappellee,* 73 N. Y. Appl. Div. 447; *Pomeroy's Eq.
Jur.,* Vol. 4, 3rd Ed., sec. 1343.

The bill in this case is not full and explicit in its charge
that the negative covenant was violated by the defendant.
While it charges the defendant with entering the employ-
ment of the Hub Piano Company, it does not specifically
allege that this latter company was engaged in a business
similar to that of the plaintiff company, nor does it clearly
allege that the duties to be performed by him, even though
for a company doing a business similar to that of the plain-
tiff, were to be performed within the territory in which he
was prohibited by his negative covenant. But assuming, and
not deciding, that the allegations in the bill are sufficient in
alleging a breach of the negative covenant, the Court below,
in our opinion, committed no error in refusing the injunc-
tions prayed.

Following the line of authorities that we have discussed
above, there is nothing in the bill showing that the duties to
be performed by the appelee, under the contract of employ-
ment between him and the appellants, were unique and
extraordinary, requiring peculiar and marked ability to pros-
ecute them successfully. The duties that he was to perform
were those of a salesman, collector and general utility man
in a business conducted, as we understand, for the sale of
pianos and other musical instruments. Nowhere in the bill
is it alleged that the duties that he was to perform were of
the class we have mentioned. The only other allegation
characterizing his duties or disclosing the character of the
position to be filled by him under the contract was, that he

had "the particular run of a class of trade in the employ of said firms." We can not gather from this allegation that the services to be performed by him were either intellectual or peculiar and individual in their character, or in any sense unique or extraordinary. They were but the duties of an ordinary piano and musical instrument salesman, whose services could be readily acquired, and where the damages, if any, suffered by the plaintiffs would not be irreparable, but could be readily ascertained and recovered by a suit at law.

The mere fact that the defendant should thereafter profit by the experience and knowledge gathered from his service with the old firm could in no sense be regarded as a legal wrong committed by him. The experience and information which he possessed was in no sense acquired under the contract which he is alleged to have broken. This experience and information he had at the time of the execution of the contract. When his employment by the old firm ceased, he could not leave with it the experience or knowledge there acquired, and it is not disclosed that there was anything to prevent him from thereafter using it to his own profit. Such knowledge or information could not be considered in the character of trade secrets, which in many jurisdictions, under certain circumstances, he would be prevented from using for his own benefit. The experience gathered by him, so far as disclosed by the bill, was a legitimate addition to his personal equipment which he has a perfect right to use for his own advantage and benefit.

The compensation to be received by him, fifteen dollars per week, for his services "during the working hours of the day and when necessary during the night," considered in the light of characterizing his duties and in no other sense, would indicate that the duties that he was to perform were not of a very extraordinary character.

From what we have said, we think the Court below committed no error in refusing the injunction.

> *Order appealed from affirmed, with costs to the appellee.*