JOHN ROANE, INCORPORATED, a Maryland corporation,
Plaintiff Below, Appellant,

*vs.*

PIERCE E. TWEED,
Defendant Below, Appellee.

*Supreme Court, On Appeal, June 12, 1952.*

Before SOUTHERLAND, Chief Justice, TUNNELL, Justice, and LAYTON, Judge, sitting.

*William Prickett*, for plaintiff below, appellant.

*Newton White*, for defendant below, appellee.

SOUTHERLAND, Chief Justice, delivering the opinion of the court:

The question presented is the extent of the injunctive relief, under Maryland law, to which an employer is entitled in a suit upon an employee's contract restricting competition by the employee after termination of his employment.

The essential facts in the case are not in dispute. They are as follows:

John Roane, Incorporated, plaintiff below (herein "plaintiff"), is a Maryland corporation engaged in the independent adjustment business. Its main office is at Salisbury, Maryland, and it has thirteen branch offices in Maryland, Delaware, and West Virginia. The function of the independent adjuster is to investigate and handle, on behalf of insurance companies, claims against them in areas where the insurance companies involved do not maintain their own facilities for adjusting claims. The business is a decentralized one, depending largely for its success on the contracts of the local offices with local insurance agents, to whom the insurance companies usually confide much discretion in the referral of claims to independent adjusters. Plaintiff has and for some years has had an office in the City of Wilmington and also one in Dover. Five other adjusting agencies operate in Wilmington and share the business referred by numerous local agents and others. The local agent is the source of at least eighty per cent of the cases referred. The independent adjusters have few exclusive customers, the settled practice of the referring insurance agents being to distribute their business among all the adjusters, in order to stimulate competition and thus induce high standards of service.

Pierce E. Tweed, Jr., the defendant below (herein "defendant"), who had previously been in plaintiff's employment for a

short time in 1941 and 1942, left the Navy in 1946, and on March 2 of that year was made manager of plaintiff's Dover office. In May 1947 he was made manager of the Baltimore office, and in July of that year was sent to Wilmington and became manager of the Wilmington office. Until January 1, 1949, there was no formal employment contract between plaintiff and defendant, and defendant's compensation consisted of a monthly salary. On or about the last-mentioned date he was called to the Baltimore office for an interview with plaintiff's president. He was offered a choice of a straight monthly salary of $350 or a formal contract providing for a monthly salary of $300 plus forty per cent of the net profits. The contract contained certain restrictive covenants, including covenants by which defendant agreed that during the life of the contract and for five years thereafter, and within specified areas, he would not solicit or take away any of his employer's customers or engage in competition with his employer. Defendant elected to take the contract, which was duly executed as of January 1, 1949. He remained in plaintiff's employment as manager of the Wilmington office until December 7, 1950. On that date he left plaintiff's organization and opened his own office as an independent adjuster in the City of Wilmington, and has since conducted his own business in competition with his former employer.

Shortly after defendant had established his own office plaintiff filed suit in the Court of Chancery seeking to enforce by injunction one of the restrictive covenants above mentioned (that contained in subparagraph 6(d) of the contract). These covenants read as follows:

"6. During the period of his employment under this agreement and for a period of 5 years after the termination thereof, employee specifically agrees as follows:

* * * * *

"(c) That he will not, directly nor indirectly, solicit, divert, take away, or otherwise interfere with any of the customers, trade, business or patronage of Employer in any area or State where it has or has had business.

"(d) That he will not, directly nor indirectly, for himself or as agent of or on behalf of or in conjunction with any other person, firm, association or corporation, engage in the insurance adjusting business within a radius of fifty miles (50) from any office of Employer where he has served as Manager under this contract."

Plaintiff claimed that defendant, in violation of his contract, had appropriated plaintiff's customers and injured its good will in the Wilmington area. Defendant denied any such injury, and further claimed that the covenant restricting competition (subparagraph d) was illegal and unenforceable under the law of Maryland. Both parties agreed that the Maryland law governed the case. The Chancellor, after hearing, determined, 32 *Del.Ch.* 80 A.2d 290, that under the Maryland law plaintiff was not entitled to an injunction enforcing in its terms the restrictive covenant sued upon. Noting that the settled practice of the insurance agents in referring business to adjusters was to distribute it to all such adjusters, and that plaintiff had few exclusive customers, he drew the conclusion that defendant's competition had inflicted upon plaintiff no more injury than would have resulted from the entry of any other competent adjuster in the field—a competition to which plaintiff was necessarily subject at any time. Consequently he limited the relief granted to an injunction against the use by defendant of his former employer's name in soliciting business, and an injunction for five years against the solicitation by defendant of business from any of the exclusive customers of plaintiff. From this judgment plaintiff appeals, urging that he is entitled to a greater measure of relief.

As above indicated, the essential question here concerns the enforceability of a contract admittedly in partial restraint of trade and competition.

Since the litigants have stipulated that this question is to be determined by the law of Maryland, our first inquiry must be directed to the decisions of the Court of Appeals of that state dealing with the subject of contracts in partial restraint of trade or competition, and particularly those between employer and employee. Eight cases are cited to us, as follows: *Guerand v. Dandelet,* 1870, 32 *Md.* 561; *Rosenstein v. Zentz,* 1912, 118 *Md.* 564, 85 *A.* 675, 44 *L.R.A.,N.S.,* 63; *Fulton Grand Laundry Co. v. Johnson,* 1922, 140 *Md.* 359, 117 *A.* 753, 23 *A.L.R.* 420; *Deuerling v. City Baking Co.,* 1928, 155 *Md.* 280, 141 *A.* 542, 67 *A.L.R.* 993; *Tolman Laundry, Inc., v. Walker,* 1936, 171 *Md.* 7, 187 *A.* 836; *Griffin v. Guy,* 1937, 172 *Md.* 510, 192 *A.* 359; *Western Maryland Dairy, Inc., v. Chenowith,* 1942, 180 *Md.* 236, 23 *A.2d* 660; and *Tawney v. Mutual System of Maryland,* 1946, 186 *Md.* 508, 47 *A.2d* 372.

The Chancellor reviewed and discussed such of these decisions as are pertinent to contracts between employer and employee embodying restrictive covenants similar in some degree to the covenant before him, and said [32 *Del.Ch.* 80 A.2d 292]:

"From all of the reported Maryland decisions, the rule to be drawn is that, in Maryland, restrictive covenants in employment contracts will be enforced after termination of employment if (1) the contract was a prerequisite of the employment or was supported by consideration, (2) the purpose to be obtained is fair and reasonable, (3) the restriction does not injuriously affect the public, (4) the enforcement of the restriction will not do greater harm to the employee than good to the employer, and (5) the enforcement of the restriction is necessary for the protection of the employer's business. I find as a fact that such is the law of Maryland applicable in this case."

For the Chancellor's analysis of the Maryland decisions see the opinion below, 32 *Del.Ch.* 80 *A.2d* 290, 291–292. Although plaintiff assails the Chancellor's interpretation of the Maryland decisions as too narrow, that is, as embodying a conclusion too favorable to the employee, we think that the lastest pronouncement of the Court of Appeals in the case of *Tawney v. Mutual System of Maryland, supra,* justifies his finding. In that case the defendant below, an employee of a small loan company doing business in the City of Baltimore, had agreed, as a part of his employment contract, not to engage in any business competitive with his employer in the Baltimore City trading area for a period of two years from the date of the termination of his employment, in reviewing its prior decisions in employer-employee cases involving restrictive covenants, the Court of Appeals quoted (approvingly, as we read the opinion) the following language from its decision in *Deuerling v. City Baking Co., supra:*

" 'The question whether (the covenant) is reasonable depends upon circumstances, the more important of which are: Is the purpose to be obtained a fair and conscionable one; will it do greater harm to the employee than good to the employer; and, if it is reasonable as between the parties, does it so injuriously affect the public as to make it void as against public policy?' " [186 *Md.* 508, 47 *A.2d* 378.]

Declining to enforce the contract restriction against competition, the Court of Appeals said that it went "beyond what is necessary to protect the good will of the employer * * *." 47 *A.2d* 379.

As in any case where the test of reasonableness is to be applied, the decision must turn on the particular set of facts presented. We think, however, that the Chancellor's summation of the general principles of the Maryland law, above quoted, is a correct one.

■ The Chancellor further found, and we think correctly, that the first three conditions had been met by plaintiff. Defendant was specifically offered a choice between a straight salary on the one hand, without a restrictive contract, and a salary and bonus, with the restriction, on the other. The design to protect the good will of the employer was reasonable in the light of the decentralized nature of its business and the opportunities of a local manager to develop valuable personal relations with the plaintiff's customers. Likewise it is clear, in the light of the referral practice of the local agents, that no appreciable harm to the public interest can ensue from the limitation of competition entailed by enforcing the contract.

The inquiry is thus narrowed to the remaining conditions which, as the Chancellor observed, are really one. They involve, we think, the determination of whether the restrictive covenant in this case was reasonably necessary, in the language of the *Tawney* case, "to protect the good will of the employer", having regard to the consequent hardship on the employee. Necessarily some hardship to the employee flows from any restriction of his right to engage in his chosen business; but if to prevent the appropriation by an employee of his employer's good will such a restriction is necessary, it will, if reasonable, be enforced.

We accordingly turn to the inquiry whether in the circumstances of this case a restrictive covenant against competition was reasonably necessary for plaintiff's protection.

In our opinion, an examination of the admitted facts surrounding the establishment of defendant's business supplies the answer to this question.

■ Defendant on October 31, 1950, advised plaintiff that, having "made arrangements for employment elsewhere" he would be leaving the organization on November 15. This date was later

changed, and he continued in plaintiff's employ until the close of business on December 6. Shortly before leaving plaintiff's employment, defendant advised four of plaintiff's customers that he was going into business for himself and solicited their custom. Three cases which had been referred to plaintiff for adjustment prior to December 6 were appropriated by defendant to himself, and he worked on these cases while still in plaintiff's employ. In the period from December 6 to January 12 (the date of his examination before trial) seventy-nine claims had been referred to him, seventy-six of which came from customers of the plaintiff. The number is significant, since the total number of cases referred to plaintiff's Wilmington office during 1950 was about 1200, or about 100 a month. On the first day of defendant's new venture seventeen cases were referred to him. During the period of a month after opening his office one local insurance agency referred to him twenty-seven cases as against nine which it referred to plaintiff. The Wilmington telephone directory, in addition to listing plaintiff's corporate name and office telephone, carried a listing of defendant's name and home telephone number for night calls. After December 6, 1950, defendant appropriated at least two cases referred him by night calls on his home telephone. Prior to the final decree below defendant circulated through the mails a card announcing the opening of his office in Wilmington as a claims adjuster, in which he described himself as "Formerly of John Roane, Inc."

In our view these facts, which are not denied, compel the conclusion that defendant appropriated a substantial amount of his employer's business and good will to his own use, in plain violation of his agreement not to do so. He began this course of conduct while he was still plaintiff's employee. It presents, as defendant's counsel candidly admits, an unpleasant picture. Indeed, it is frankly stated on behalf of defendant that during the month he continued to occupy plaintiff's office, he may have had an unfair advantage. We think it manifest that he did take unfair advantage of his position, and we also think that such unfair advantage persisted after he opened his own office. It is impossible for us to escape the conclusion that defendant built his business largely upon his employer's.

From this finding it follows, we think, that a covenant restricting to some extent defendant's right to compete was reasonable and was required for the protection of his employer.

Against this conclusion defendant in effect makes two arguments.

First, defendant says that the holding in the case of *Tawney v. Mutual System of Maryland, supra*, precludes enforcement of an employee's covenant not to compete with his employer. Specific relief may be granted, it is said, only to protect trade secrets or "customers' lists". The instant case, says defendant, involves no question of trade secrets, nor did defendant appropriate and use a list of plaintiff's customers, since no such list existed, the sources of business (the insurance companies and agents) being available to any competing adjuster from examination of directories and similar publications.

We do not construe the holding of the *Tawney* case so narrowly. We agree that it represents an approach to the problem of employer-employee restrictive covenants somewhat narrower, from the employer's point of view, than the prior decisions of the Court of Appeals; but it does not overrule them, and it recognizes, as above noted, that a reasonable measure of protection of the employer's good will is proper. In the *Tawney* case the court, commenting upon the breadth of the restrictive covenant, says:

"In the case at bar it is sought to enforce a restriction beyond the time when new employees might reasonably become acquainted with existing customers, and apply it to the whole trading area of Baltimore and environs, wherein there are several hundred thousand people with whom the employer has no contact whatever, and to a business where the occasional financial need of the customer, rather than the recurrent calls of the supplier, is the prime incentive. We think this goes beyond what is necessary to protect the good will of the employer, and works an undue hardship upon the employees, who would be excluded from engaging in the business for which they are specially fitted by long training and experience. Moreover the effect of enforcing the clause (M) would be to stifle competition, in a field where the existence of competition is clearly in the public interest."

The substance of the holding, we think, is that the covenant against competition was unnecessarily broad, since its effect was to prevent the employees from dealing with "several hundred

thousand people with whom the employer has no contact whatever." The difference in the factual situation here is obvious. The field is a limited one. By far the greater part of defendant's business has been drawn, and doubtless will continue to be drawn, from sources with whom plaintiff had continual contact and as to whom it had established a definite good will. The situation is thus more analogous to the facts of the "route cases" in Maryland involving an established list of customers than to the facts of the *Tawney* case. It is certainly doubtful whether, under Maryland law, a customers' list, in order to be entitled to protection, must be secret. *Cf. Fulton Grand Laundry Co. v. Johnson, supra,* in which it was held that a list of customers on a laundry route is not a trade secret, since it "is susceptible of discovery by observation". That reasonable restrictions against competiton to prevent the pirating of the employer's good will will be enforced is clear from the earlier Maryland cases, provided they extend no further than the necessities of the case. *Deuerling v. City Baking Co., supra; Tolman Laundry, Inc., v. Walker, supra; Griffin v. Guy, supra.* It is said in *Morris v. Saxelby,* 1 *A.C.* (1916), 688, cited by defendant, in discussing restrictions against competition, that the employer is "entitled not to have his old customers by solicitation or such other means enticed away from him." This is to say that an employee may not appropriate his employer's good will if he has agreed not to do so. We find nothing in the *Tawney* case inconsistent with this conclusion. We think the Maryland decisions recognize the enforceability of restrictive covenants against competition in proper cases, the inquiry in each case being directed to the extent of the restraint and the necessity for its existence in the particular circumstances presented.

We do not think that the Maryland law strikes down the restrictive covenant here involved as wholly illegal.

Second, defendant strongly presses the argument that because plaintiff has few exclusive customers among the insurance companies and agents who refer claims to the adjusters its business lacks the good will the existence of which is the necessary predicate for the enforcement of a restrictive covenant against an employee. The basis of this argument is the settled practice of

such companies and agents in distributing business, already referred to. Had any other competent adjuster entered the Wilmington field he would have obtained a share of the business; hence it follows, says defendant, that defendant has no unfair advantage in seeking business, and has inflicted no special injury upon plaintiff. This contention the Chancellor accepted, holding that the entry by the defendant into the field of independent adjusting in his own behalf has had no more damaging effect upon the plaintiff's business in the territory than the entry of any competent adjuster into the field. Defendant urges that this holding constitutes a finding of fact, upon sufficient evidence, which will not be disturbed upon appeal. We do not so regard it. We view it as a conclusion from the admitted fact of the lack of exclusive customers—a conclusion legal rather than factual in nature. Implicit in this finding is the legal conclusion urged by defendant, viz., that good will, and the necessity for its protection, must be predicated upon the existence of individual customers whose patronage is fixed and invariable, that is, customers who to satisfy a certain want deal exclusively at a certain place.

With this holding of the Chancellor we are constrained to disagree. We think it unwarrantably narrows the concept of good will. Good will has been variously defined, e. g., as "the esteemed popularity of a business house, tending to maintain its custom" (*Funk & Wagnall's Dictionary*); or as "the benefit arising from connection and reputation" (*Lindley, Partnership*, 440); or as "the probability that old customers will resort to the old place" (*Crutwell v. Lye*, 17 *Vesey, Jr.* 33, 34 *Eng.Rep.* 129). It is a concept of the most general nature and is not readily susceptible of precise delimitation. We do not think that a business whose customers frequently deal elsewhere has for that reason alone no good will. A reputation for fair dealing, skill, knowledge and prompt attention to business may draw customers of any degree of frequency— habitual, occasional or casual. A monopoly of customers is not necessary. In the instant case plaintiff's customers were clearly frequent ones, although not exclusive. They returned to plaintiff from time to time because, it appears from the testimony, they took their custom where they received prompt and satisfactory service. That they also received it elsewhere does not deprive plain-

tiff of the benefit of the connections it had. Indeed, for our present purpose the need of plaintiff for protection of its good will against appropriation of its customers by employees is the greater because of the very fact upon which defendant builds his argument, viz., the highly competitive nature of the field. Presumably, exclusive customers would be less apt to go to a new competitor.

We are not cited to any case in Maryland opposed to these conclusions. The injunction awarded in the *Tawney* case applied to all customers, whether exclusive or otherwise. The opinion of the Surrogate in the case of *In re Welch*, 77 *Misc.* 427, 137 *N.Y.S.* 941, 942, is apposite. Dealing with the question of the existence of good will in a cash-and-carry ice business, he said:

"Whether its customers dealt for cash or not, whether they were constant or not, furnishes no criterion for a finding as to whether the business had a good will. An established and respected trade, which appeals to casual purchasers, is at least as much the subject of good will as one which caters to a fixed and faithful number of patrons. The qualities which successfully serve a fluctuating class of customers coincide peculiarly with the elements upon which, according to the authorities, good will grows into an asset of calculable value. It cannot be said that there was not a good will inherent in this business."

Accordingly the contention of defendant and the conclusion of the Chancellor, that defendant's conduct has inflicted no substantial injury upon plaintiff, we cannot accept. As above stated, we think he appropriated to his own use a substantial measure of his employer's good will.

Nor do we yield assent to the suggestion that the wrong thus committed ceased upon the initial establishment of defendant's own business and the lapse of a few months thereafter. The advantage enjoyed by defendant, compared with the obstacles that confront a stranger entering the field, is manifest. The results cannot be forecast with precision, but it is reasonble to believe that at least some of defendant's present business is founded on his original wrongdoing and that the effect of defendant's initial advantage will persist for some time in the future. At all events, it is clear that some measure of restraint against competition was reasonable and is now called for. The argument that what defendant did is over and done with and no further relief is justified is not acceptable.

16

We are therefore of opinion that the measure of relief granted plaintiff is insufficient.

■ The question at once arises: is plaintiff entitled to the relief prayed for, an injunction enforcing paragraph 6 (d) of the contract as written? That restraints upon competition must be reasonable both in respect of time and area is well settled. Although the earlier rule appears to have sanctioned restraints without limit as to time, *cf. Griffin v. Guy, supra*, it appears to us that under the holding in the *Tawney* case, above quoted, the restraint may be no more than reasonably required to protect the employer's good will and may not be unlimited in either respect. Moreover we think, notwithstanding plaintiff's argument to the contrary drawn from the earlier Maryland cases, that the Court of Appeals of Maryland has approved, at least impliedly, the view that restrictions against competition in an employee's contract are less readily enforced than restrictions attached to a sale of a business. See the *Restatement, Contracts, Sec.* 514, and 5 *Williston, Contracts, (Rev.Ed.)., Sec.* 1643, cited in the *Tawney* opinion. We examine the covenants before us in the light of these principles.

■ It is at once apparent that both covenants are so broad in respect of the area forbidden as to be unreasonable. The covenant in paragraph (c) is admitted by plaintiff to be too broad. The covenant in paragraph (d) is likewise too broad. A circumference of fifty miles radius from plaintiff's Wilmington office includes the cities of Philadelphia and Chester in Pennsylvania, and the city of Camden in New Jersey—all thickly populated metropolitan districts in which, we may safely assume, are situated large numbers of insurance offices from which the plaintiff's Wilmington office draws few if any referrals, and in which competition from defendant would present no threat to plaintiff's business. This is sufficient to stamp the covenant as unreasonable in extent. We pass for the moment the question of the unreasonableness of the period of time fixed (five years), which is not so apparent. But neither covenant, we think, can be enforced as written, for the reason that the forbidden area is excessive.

■ What is the consequence of this conclusion? Must both covenants be held unenforceable in any respect, or may they be

given effect in such area and for such period of time as appears reasonable? The rule in England and in the majority of American jurisdictions is to apply the so-called "blue pencil test", that is, if the excessive restraint is severable in terms, it may be disregarded and the remaining part of the covenant enforced; but if the covenant is not severable in terms, the entire covenant falls. Thus in *Green v. Price*, 13 *M.&W.* 695, 153 *Eng.Rep.* 291, it was held that a covenant not to compete within the cities of London and Westminster or within the distance of 600 miles therefrom was enforceable as to London and Westminster, but that the 600 miles could not be divided. And see 5 *Williston, Contracts (Rev.Ed.), Sec.* 1659. On the other hand, a minority of American courts, apparently representing a later view, hold that the legality of contracts in restraint of trade should not turn upon the mere form of wording but upon the reasonableness of giving effect to the indivisible promise to the extent that would be lawful. 5 *Williston, Contracts, Sec.* 1660. This rule, recently developed, is of course an exception to the general principle, rarely departed from, that the courts will not enforce a contract in terms differing from the agreement made by the parties themselves, *cf. Stabler v. Ramsay*, Del., 32 *Del.Ch.* 88 *A.2d* 546, but it has the support of high authority. Our inquiry must be directed to the Maryland law on the subject.

Only one decision in Maryland has been cited to us as pertinent, that of *American Weekly, Inc., v. Patterson*, 1940, 179 *Md.* 109, 16 *A.2d* 912, 915. That case involved a sale of the Washington "Herald-Times" by the Hearst interests. As a part of the sale the purchaser agreed to buy a copy of the "American Weekly", published by vendor, for distribution with the "Herald-Times", and also agreed not to permit the distribution and sale of pre-dated issues of the paper in certain areas where the vendor did a competing business, including the State of South Carolina. Subsequently the vendor ceased to do such competing business in South Carolina, and the purchaser thereupon distributed and sold the Washington newspaper in that state. The vendor sought to avoid the contract. The court held that the purchaser had not breached the contract and that the restrictive covenant would be enforced only to the extent necessary to protect the vendor's interests. The Court of Appeals said:

"It has long been the rule in this State that a covenant not to engage in business in competition with a business then being sold, will be enforced, but only to the extent necessary to protect the interest of the new purchaser. Guerand v. Dandelet, 32 Md. 561, 3 Am.Rep. 164; Griffin v. Guy, 172 Md. 510, 192 A. 359; Edgecomb v. Edmonston, 257 Mass. 12, 153 N.E. 99; Stanley Co. v. Lagomarsino, D.C., 53 F.2d 112.

"Where the covenant as originally drawn has been found too broad, courts have had no difficulty in restricting it to its proper sphere and enforcing it only to that extent. See Williston on Contracts, 4th Ed., Sec. 1660."

The above statements of the Court of Appeals indicate approval of the rule of partial enforcement. The case is cited by Williston in a supplemental note to the text of *Section* 1660. Defendant says that the last quoted paragraph is but dictum, and further, that the question there presented involved only a limitation on the enforcement of a contract valid when executed, incident to the sale of a business and not to an employee's contract, whereas in the instant case the attempted restraint was excessive from the beginning. Since the decision was grounded on the doctrine of partial enforcement, approved by Williston, the quoted language can hardly be said to be dictum. It is true that the factual situation was somewhat different, but in the absence of any other Maryland authority we must accept the quoted statement as the Maryland law, even if regarded as dictum. *Haven v. Haven*, 181 *Mass.* 573, 64 *N.E.* 410. It is also said by defendant that the restrictions are so illegal and oppressive as to render the contract unconscionable, and that it should accordingly be rejected *in toto*. We do not think so. Paragraph (c) relates only to solicitation, not to engaging in business, and paragraph (d), the more onerous covenant, though too broad in the circumstances, is not so manifestly oppressive as to be unconscionable.

It is also said that defendant was in an inferior bargaining position and was in effect coerced into signing the contract in order to retain his job. We are referred to no testimony supporting this assertion. On the contrary, defendant's evidence was that he was offered the choice above mentioned, and he chose the contract. He wished its benefits and now seeks to repudiate its burdens. This he may not do.

We are therefore to apply the rule of partial enforcement.

██  We do not think that any relief under sub-paragraph 6(c) is required. Directing our attention to the covenant against competition in sub-paragraph 6(d) of the contract, we note that the location of plaintiff's office is in the City of Wilmington and that by far the greater part of the available business has been drawn from sources in that city, with some referrals from points in Delaware within the specified distance (e. g., four from Clayton, Delaware, were referred to defendant). Within this area in Delaware, Wilmington is the only large center of population. We also note that defendant for more than a year was manager of plaintiff's Dover office. We think in the circumstances that an injunction against competition within that portion of the State of Delaware lying within a circumference or arc of fifty miles' radius from plaintiff's office is sufficient to give plaintiff adequate relief, and the covenant will be partially enforced to that extent. Under the rule of partial enforcement there is ample precedent for this conclusion. See *Hill v. Central West Public Service Co.,* (5 *Cir.*), 1930, 37 *F.2d* 451; *Edgecomb v. Edmonston,* 257 *Mass.* 12, 153 *N.E.* 99; *Metropolitan Ice Co. v. Ducas,* 291 *Mass.* 403, 196 *N.E.* 856; *O. Hommel Co. v. Fink,* 115 *W.Va.* 686, 177 *S.E.* 619; *McAnally v. Person,* (*Tex.Civ. App.*), 57 *S.W.2d* 945.

██  There remains the question of time. Upon the question of the reasonableness of the five-year period plaintiff adduced the testimony of two of its branch managers, indicating that even after an absence of from four to six years from a particular territory, an operator of an independent adjusting office would be able to reacquire some of his contacts. Interrogated upon this point, defendant said he could not estimate the time that would have to elapse before a branch manager who had quit the territory would no longer be able to return and reacquire his business. This is all the testimony in the matter. In cases of this sort it is not unusual for the appellate court to make the necessary finding upon the available evidence. *Edgecomb v. Edmonston, supra; O. Hommel Co. v. Fink, supra.* Since plaintiff's witnesses were its branch managers, we view the testimony in the light most favorable to defendant, and are of opinion that a four-year restriction will afford adequate relief to plaintiff. Since this

period must be computed from the expiration of defendant's employment by plaintiff, *cf. Western Maryland Dairy, Inc., v. Chenowith, supra,* it will expire December 6, 1954.

It follows that the judgment of the court below dated May 29, 1951, must be reversed and the cause must be remanded to the Court of Chancery of New Castle County with instructions to vacate that judgment and to enter a judgment granting plaintiff injunctive relief under paragraph 6(d) of the contract sued upon to the extent indicated in this opinion.