BRIGGS, D. B. A. THE WELCOME WAGON SERVICE CO., APPELLEE, *v.* BUTLER, APPELLANT.

(No. 3861—Decided March 2, 1942.)

*Mr. Robert H. Stickley* and *Messrs. McMahon, Webber & Hayward,* for appellee.

*Messrs. Fraser, Effler, Shumaker & Winn,* for appellant.

BY THE COURT. The plaintiff, Thomas W. Briggs, at the times alleged in his petition was and continually since then has been engaged in operating an advertising service in some 517 cities in various states of the United States, the District of Columbia and Canada under the name of The Welcome Wagon Service Company, and on or about September 10, 1938, employed the defendant, Charlotte Meyers Butler, as "hostess" to be his representative in the conduct of his business in Toledo. Paragraph eight of the written contract of September 10th, entered into between the plaintiff and defendant, reads as follows:

"8. It is understood and agreed that the plan of advertising through the means of a welcome wagon service involves methods, systems, and trade usages which the company and its predecessors have had in general use for a long period of time and which have

been developed and extended at great expense, with which methods, systems, plans and trade usages, hostess, by virtue of this employment, will necessarily become acquainted; that the company has been and is now, operating its service in different cities, towns, etc., throughout the United States and certain parts of the Dominion of Canada, and intends to introduce and operate its service in other cities, towns, boroughs, provinces and townships throughout the United States and Canada, as soon as it is practical so to do. Now, therefore, for and in consideration of this employment and the compensation to be earned and paid to the hostess hereunder, the hostess covenants and agrees (which covenant and agreement is the essence of this contract) that she will not, during the term of this employment and for a period of five whole years thereafter, engage, directly or indirectly, for herself, or as representative or employe of others, in the same kind or similar business, in competition with the company in Toledo, Ohio, and/or in any city, town, borough, township or other place in the United States and Canada, in which the company is then engaged in rendering its service.''

The contract provided also that it should continue ''so long as it is the mutual desire of the parties'' and that it constituted and represented the whole agreement between them, ''all promises, representations and understandings relative thereto being herein merged,'' no amendments or modifications thereof to be binding upon either party unless in writing, signed by both of them. A subsequent agreement executed on April 21, 1939, contains the conditions and covenants as hereinabove quoted and stated. The two contracts are essentially the same, the second having been made apparently so that it would appear as executed by defendant in her married name of Butler.

The evidence shows that the advertising plan or method used by plaintiff in his business consists of having an employee, termed a "hostess" call upon newcomers and newly married persons in a semi-social way and learn thereby what information might be desired by them as to schools, churches, etc., and having given the desired information, to present in a tactful way the merits of the merchandise of the businesses for which, by prearrangement, the plaintiff was rendering this advertising service, leaving a sample of the articles of merchandise of the merchant, or in some other way extending some courtesy calculated to attract the newcomer or newlywed to deal with the place of business so advertised. The advertisers with whom contracts are made by plaintiff are designated as sponsors. Contracts are made with only one retailer of a class in a given community, as, for example, one department store, one bank, one grocery, one clothing store, etc.

The plaintiff seeking to establish his advertising service in a particular city, obtained, when possible, letters of commendation and "welcome to our city" from the mayor, chamber of commerce and others, including ministers of the churches, to show to those upon whom the hostess called, thus giving to his business the semblance of a public as well as a private benefit, a not unusual procedure.

In the record are two letters to plaintiff signed by Charlotte Meyers, now Mrs. Butler, where, in one dated September 10, 1938, the date of the execution of the contract, she states that she has "just finished signing my application for position of hostess with The Welcome Wagon Service Company. May I assure you that I understand thoroughly all the terms and requirements stated in the contract"; and in the other, dated September 15, 1938, the day following the begin-

ning of her solicitation of customers for the sponsors represented by plaintiff, that "I'd like to tell you how very glad I am to be connected with your marvelous organization. The limitless possibilities interest me tremendously and I'm anxious to get this training completed and get really working on the thing"; and more of like tenor. Although unimportant, portions of these letters bear the imprint of form letters ready-made for copying and signature.

The hostess, in this case Mrs. Butler, before undertaking her employment as the representative of the plaintiff, is advised and instructed as to the method and means of approach considered by plaintiff as successful in inducing the prospective customers to purchase needed merchandise from the particular merchants with whom plaintiff had contracted for his service; and the plaintiff claims that the knowledge so communicated to her, and his method and system of doing business being unique, constitutes a trade secret, and therefore Mrs. Butler's employment consisted of something more than mere salesmanship, depending upon the personality, intelligence and ability of the salesman. The general manager of the business of plaintiff said, on cross-examination:

"It is much broader than advertising salesmanship because it includes an application of psychology that enters into the thing and is the most responsible factor in its success."

Incidentally, it may be suggested that the psychological element is a factor in all classes of salesmanship.

Further, he testified that the training of a hostess consists in instructing her how to approach the newcomer, how to act and what to say, and that, although he had been engaged in advertising salesmanship for thirty years or more, he "had never heard of this

until Mr. Briggs tried to operate it. The details," he said, "of how they are to do it is to approach each one individually and watch closely the reactions and take care to make their call purely a call that will be appreciated, to forget if possible in making the approach, that there is anything commercial in the approach at all, and with an extreme effort to make that person happier on account of their call, to render service that will be appreciated to the extent that her appreciation will invariably amount to a keen desire to patronize the firm who has sponsored the call. * * * We employ hostesses of high degree of intelligence. We don't have to tell them what to say in exact words."

For the service rendered, the sponsor pays to the plaintiff a certain amount for each call made on newcomers or newlyweds which results in their becoming prospective customers of the sponsors. The hostess receives, as compensation for her services, 50 per cent of the gross sum so paid by the sponsor to the plaintiff. Out of this 50 per cent she has to pay operating expense of automobile, insurance, stamps, "everything that went into the carrying on of the business."

Mrs. Butler continued as hostess for plaintiff from September 14, 1938, to some time in December 1939, when she resigned. She had theretofore been employed as assistant advertising manager by Lamson Brothers, a department store in Toledo, and before that in the advertising department of Hudson's, a Detroit department store. She terminated her contract with the plaintiff because, she says, that whereas the agent of plaintiff, through whose persuasion she entered into the contract, represented to her that she could and would earn at least $125 to $150 a month, she never was able to net more than $25 per month. This is not disputed.

Between the time of her resignation and January 1, 1940, her husband, Paul Butler, organized a business under the name of the "Toledo Newcomers Service," of which, beginning the 1st of January 1940, she became an employee, doing substantially what she had theretofore done while in the employ of the plaintiff. The Toledo Newcomers Service, unlike plaintiff, did not call upon newcomers until two weeks or so after their arrival in the city and did not seek or obtain letters from the mayor, chamber of commerce, civic organizations or other local personages.

The evidence discloses that the nature of the business of plaintiff and the manner in which it was conducted were known to each of his sponsors, as well as to those who were and had been employed by him, and in some of the cities in which he operated, others were engaged in the same class of business and that in addition to the Toledo Newcomers Service, a Mr. Greenman of Canton is operating a similar business in Toledo under the name of "Good Neighbor Service." The evidence also shows that prior to Mrs. Butler's employment by plaintiff, at least two hostesses had previously acted for him in that capacity.

On March 27, 1940, the plaintiff filed his petition in the Court of Common Pleas against the defendant, Mrs. Butler, praying that she "be ordered, directed, required and enjoined to comply with the terms and provisions of said contracts and that the defendant be enjoined from engaging in or conducting and continuing to conduct for a period of five whole years from December 18, 1939, either directly or indirectly, the advertising business in which the defendant is now engaged, and engaging in or conducting or continuing to conduct, for a period of five whole years from December 18, 1939, either directly or indirectly for herself or as representative or employee of others, the

same or any similar or competitive business with the business conducted by the plaintiff, either in the city of Toledo, Ohio, or in any city or town of the United States or Canada in which the plaintiff is then engaged in rendering its service.''

There is no claim made in the petition, nor any evidence, that Mrs. Butler has contacted or weaned away from plaintiff any of his customers and no prayer for relief in that regard. The complaint of the petition of plaintiff is ''that the business of the plaintiff is original and unique and is specialized and peculiar in its nature, and has required and received the expenditure of much thought and ingenuity in its development, as well as the expenditure of large sums of money;'' that ''plaintiff has devised and used in the city of Toledo and elsewhere and continues to use certain specified methods peculiar to his said business, which constitute trade secrets;'' and that by the special course of instruction given to defendant she became acquainted with plaintiff's special methods and trade secrets and since leaving plaintiff's employ, in violation of her contract, has used and is using the business knowledge and information thus acquired and the usages, plans and systems invented and used by plaintiff in his business in a competitive and like form of business in Toledo and elsewhere.

The Court of Common Pleas having decreed to plaintiff the relief sought, the defendant appeals to this court on questions of law and fact.

In 2 Restatement of the Law of Contracts, 1001, in amplification of Section 516 thereof, it is stated that:

''A promise of a former employee will not ordinarily be enforced so as to preclude him from exercising skill and knowledge acquired in his employer's business, even if the competition is injurious to the latter, except so far as to prevent the use of trade secrets or

lists of customers, or unless the services of the employee are of a unique character.''

This court is unable to infer or find from the facts in evidence that the employment of defendant by the Toledo Newcomers Service Company has in any way affected the business of plaintiff in Toledo or in any of the cities wherein the ''Welcome Wagon Service'' is being conducted, or that any trade secrets have been divulged thereby; nor does it appear that the service rendered by the defendant to plaintiff was in any respect unique, or that the plaintiff has any proprietary right in his method of doing business.

Any business different in plan and operation in its inception may be said to be unique but when put in operation ceases to be so, because its patrons and customers thereupon learn of and become familiar with such plan. There was once a first cafeteria, unique and different in method and operation from other food dispensing places of business, but when opened to the public, its method and system of operation became public property and whatever there was unique or secret in its origination thereupon terminated. Likewise, whatever trade secrets, if any, there were in the method and system planned by plaintiff to be used in his business and whatever was unique therein in its origination, ceased to exist when and after it became a matter of public knowledge by being put into effect in the operation of the business.

The training instructions were not unique because others than defendant knew all that she knew about the advertising method adopted by plaintiff and were using the same or similar sales talk. For the same reason, there were no trade secrets to conceal. The fact of the matter is that, as stated by the manager of plaintiff's business, the success of the hostess depended upon her intelligence, initiative and personality,

and Mrs. Butler had more than ordinary experience in the advertising business and was employed by plaintiff because of her experience and exceptional ability, and that belonged to her, and was her stock in trade for earning a livelihood. Her employment was in effect that of a sales agent working on a commission. The pleading in the petition of the plaintiff and the claim made by him that his business was original and unique, involving trade secrets, when the positive evidence is that, if ever it had been so, it had long since ceased to be, scarcely warrants the relief sought.

In 4 Restatement of the Law of Torts, 5, Section 757, is stated the obvious truism that "The subject matter of a trade secret must be secret." In the instant case, not only the employees of plaintiff knew the advertising method of plaintiff, but all of his sponsors, the contacted newcomers and newlyweds as well as others who were and are conducting similar activities, were cognizant thereof, as presumably were the mayor, the chamber of commerce and other organizations and persons who endorsed it.

The injunctive process is an extraordinary remedy granted rather by grace than as of absolute right, and to be granted only when the evidence is clear as to its propriety and necessity. In the brief of plaintiff it is stated that the Restatement of the Law as found in Sections 513 to 519 of the Restatement of the Law of Contracts "is merely the opinion of its compilers as to what the law should be." This court is of the opinion that the law therein stated is not merely what it should be, but what it is.

Concluding that the plaintiff has failed to prove that the manner in which he conducts his business and the "methods, systems and trade usages" used therein are unique or involve any trade secrets or that he has sustained any damage resulting from defendant's sub-

sequent employment, the temporary injunction herein is dissolved and the petition of the plaintiff dismissed at his costs.

*Decree accordingly.*

OVERMYER, GUERNSEY and LLOYD, JJ., concur.

GUERNSEY, J., of the Third Appellate District, sitting in place of Carpenter, J., of the Sixth Appellate District.