## HYDRAULIC PRESS MFG. CO. v. LAKE ERIE ENGINEERING CORPORATION et al.

### No. 46.

Circuit Court of Appeals, Second Circuit.

Dec. 30, 1942.

Penney & Penney, of Buffalo, N. Y. (Charles P. Penney and Alfred A. Buerger, both of Buffalo, N. Y., of counsel), for appellee-defendant Lake Erie Engineering Corporation.

Rann, Brown, Sturtevant & Kelly, of Buffalo, N. Y., and Toulmin & Toulmin, of Dayton, Ohio (Howard R. Sturtevant, of Buffalo, N. Y., and H. A. Toulmin, Jr., and Rowan A. Greer, both of Dayton, Ohio, of counsel), for appellant-plaintiff.

Saperston, McNaughtan & Saperston (Alfred M. Saperston and R. Kerford Wilson, of counsel), for appellee-defendant Hans Illing.

Before L. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The decisive issue involved in this appeal by the plaintiff from a final decree of the District Court for the Western District of New York dismissing its bill of complaint on the merits is whether a restrictive covenant in an employment contract between the plaintiff and one of the defendants will be enforced in a court of equity. Jurisdiction is based on diversity.

The plaintiff, whose principal place of business is at Mount Gilead, Ohio, manufactures and sells hydraulic presses and their equipment. It does an extensive business and sells its products throughout the United States and Canada as well as in other parts of the world. It employed the individual defendant Illing, a mechanical engineer, in April 1939 to work in its manufacturing plant as a draftsman and he continued to work for the plaintiff until February 2, 1942, when his employment was terminated after he had given notice of his desire to quit and been told that he could leave at once. He was paid $125 a month when first employed and that salary had been increased before he left to $160 a month which with pay for overtime enabled him then to earn on the average about $175 monthly as a designing engineer. He was one of a committee of three to revise and prescribe engineering standards but what he did in that regard, if anything, was not shown.

When he began work for the plaintiff he signed an employment agreement which the plaintiff as a general rule required its employees to sign and which was later initialed by an officer of the plaintiff. That was a printed form with blanks to be filled out giving information concerning the employee's health and other pertinent matters and provided that he agreed in consideration of an unstated amount of wages to be paid to him for no stated time to comply with numerous conditions of employment which were set forth. None of them now need be quoted except the following: "As a further consideration of employment the undersigned agrees not to enter into the employ of a competitor located in the Unit-

ed States of America, of The Hydraulic Press Manufacturing Company, within one year from the date of my release from employment by the said The Hydraulic Press Manufacturing Company."

In 1940, Illing had had some correspondence with the other defendant the Lake Erie Engineering Corporation, a competitor of the plaintiff at Buffalo, N. Y., in respect to employment by it but then had decided not to leave the plaintiff. In January, 1942, he again sought employment of that defendant. He had forgotten about the employment agreement he had signed with the plaintiff and without telling his new employer anything about it made arrangements to take a position as a draftsman with that defendant. The plaintiff, however, learned of his intentions before he began work for the Lake Erie Engineering Corporation and notified it at once of the restrictive covenant in the contract Illing had signed. As the defendants did not recognize the validity of that, this suit followed to enjoin the Lake Erie Engineering Corporation both pendente lite and permanently from employing Illing contrary to the terms of his employment agreement with the plaintiff.

It was alleged in the bill of complaint that Illing had during his employment by the plaintiff obtained "valuable and secret information, data and ideas of the plaintiff both as to drawings, specifications, processes and methods of manufacture, and other trade secrets and confidential information which, if revealed to a competitor, would enable such competitor to copy, duplicate or follow methods, ideas and developments of the plaintiff * * *". The defendants denied this in their answers and the plaintiff failed to prove all that was alleged. The trial court found in this respect on adequate evidence that: "During the course of Illing's employment he was assigned to work consisting of designing hydraulic presses orders for which had previously been secured by the plaintiff. In this work he was under the supervision of the plaintiff's head engineer. In the course of his work and in connection with it he exercised his own talents and ingenuity and had access to the files of the plaintiff and all its engineering data and methods of practice." The court also found that, "Illing was not in possession of any trade secrets belonging to the plaintiff," and further that

"The nature of his employment with the plaintiff did not make it reasonably necessary for the protection of plaintiff in its business to restrict Illing from entering the employ of plaintiff's competitors after leaving plaintiff's employment."

■ Accepting these findings since they are justified by the evidence, we have no doubt that the decree should be affirmed. Such a restriction as the plaintiff relies on is in derogation of the right of defendant Illing to practice his profession in earning his living wherever he can find work to do. In general no private employment contract which curtails that right will be enforced in a court of equity unless the rights of the employer reasonably need such protection. Super Maid Cook-Ware Corporation v. Hamil, 5 Cir., 50 F.2d 830. In this instance it is obvious that they do not. Illing was in possession, of course, of such knowledge of the plaintiff's business as was necessary to enable him to work as a draftsman and do what designing was required on orders submitted to him, but he had none of the plaintiff's trade secrets to disclose to any competitor or to anyone else. His situation is not to be confused with that of a salesman whose acquaintance and personal relationships with customers of the plaintiff might enable him to divert their trade unfairly to a competitor. See, Federal Sanitation Co. v. Frankel, 34 Ohio App. 331, 171 N.E. 339. Nor does his situation fall within other recognized exceptions to the general rule that when a man terminates one employment he may seek and take another wherever he can find it. See, United States v. Addyston Pipe & Steel Co., 6 Cir., 85 F. 271, 281 et seq., 46 L.R.A. 122. This plaintiff has been unable to prove that it had lost more than the continued services of Illing who was under no obligation to work for it for any definite time. It has proved no reasonable need for any protection under the restrictive covenant he signed. It has failed even to prove that Illing's services in any way differed from those ordinarily performed by a mechanical engineer who could be hired for $175 a month. It has, therefore, failed to prove any equity in the bill of complaint and it was properly dismissed on the merits.

As the decree must be affirmed for the reasons already given, we find it unnecessary to discuss the other points raised.

Decree affirmed.