JOHN ROANE, INCORPORATED, a Maryland corporation,

*vs.*

PIERCE E. TWEED.

*New Castle, April 20, 1951.*

*William Prickett,* Wilmington, for plaintiff.

*Newton White,* Wilmington, for defendant.

WOLCOTT, Chancellor: This case has come on for decision after final hearing. The plaintiff seeks to enforce a covenant against competition in a contract of employment between plaintiff and defendant.

The plaintiff is a corporation of Maryland engaged in the independent insurance adjusting business and having a branch office in Wilmington, Delaware. The defendant entered the employ of the plaintiff in 1941 and remained in that employ continuously except for a period during the war, returning on March 1, 1946. In July, 1947, he became manager of the plaintiff's branch office in Wilmington. On January 1, 1949, in Baltimore, Maryland, the parties executed the employment contract in question.

On December 7, 1950, in accordance with the terms of the employment contract, the defendant voluntarily left the plaintiff's employ and opened an independent insurance adjusting office in Wilmington.

The employment contract contained the following covenant:

"6. During the period of his employment under this agreement and for a period of 5 years after the termination thereof, Employee specifically agrees as follows:

"(d) That he will not, directly nor indirectly, for himself or as agent of or on behalf of or in conjunction with any other person, firm, association or corporation, engage in the insurance adjusting business within a radius of fifty miles (50) from any office of Employer where he has served as Manager under this contract."

The parties are agreed that this case is to be decided in accordance with the law of Maryland. In view of their

stipulation, I am not called upon to decide the question of whether the enforcement in Delaware of a restrictive covenant in an employment contract executed in Maryland shall be decided in accordance with Delaware or Maryland law. I accept the parties' stipulation.

The law of Maryland governing the enforcement of covenants of this type is embodied in five decisions of the Maryland Court of Appeals, viz: *Deuerling v. City Baking Co.*, 155 *Md.* 280, 141 *A.* 542, 67 *A.L.R.* 993; *Tolman Laundry, Inc. v. Walker*, 171 *Md.* 7, 187 *A.* 836; *Griffin v. Guy*, 172 *Md.* 510, 192 *A.* 359; *Western Maryland Dairy v. Chenowith*, 180 *Md.* 236, 23 *A.* 2d 660; and *Tawney v. Mutual System of Maryland*, 186 *Md.* 508, 47 *A.* 2d 372. Two other decisions of the Maryland courts have been called to my attention but they are inapposite. *Rosenstein v. Zentz*, 118 *Md.* 564, 85 *A.* 675, 44 *L.R.A., (N.S.)* 63, considered a restrictive covenant effective only during the term of employment and, as such, is distinguished in the *Deuerling* case from a restrictive covenant effective after termination of employment. *Fulton Grand Laundry Co. v. Johnson*, 140 *Md.* 359, 117 *A.* 753, 23 *A.L.R.* 420, is obviously not in point since it dealt with an attempt to enjoin a former employee from competing in the absence of a restrictive covenant to that effect.

The *Deuerling* case involved an employee of a bakery who, in the course of his employment, served a definite territory. The customers served by him comprised a definite selected group of customers gathered together at the expense of the employer. Under such circumstances, the employer was protected from the unfair competition of his former employee seeking to entice away the same group of customers.

*Tolman Laundry, Inc., v. Walker, supra,* and *Western Maryland Dairy v. Chenowith, supra,* are substantially similar in their facts and results.

The defendant at bar relies upon *Tawney v. Mutual System of Maryland, supra,* the latest expression of the Court of Appeals of Maryland in the field. In that case, the employer, a small loan corporation, sought to enjoin its former manager and cashier from competing with it in the same territory in violation of restrictive covenants to that effect in their employment contracts. The two defendants, after voluntarily leaving the plaintiff's employ and setting themselves up in competition, actively solicited the plaintiff's customers. The result after a period of three weeks was the transferral of one hundred and one of plaintiff's customers to the defendants. The Court of Appeals modified the blanket injunction issued by the trial court and enjoined the defendants from making public the names of the plaintiff's customers and from using information relative to those customers to the disadvantage of the plaintiff for a period of three years, but refused to enjoin the defendants from competing with the plaintiff.

The refusal to enjoin the competition of the defendants with the plaintiff generally was based upon the conclusion that it was not necessary to do so in order to protect the good will built up by the plaintiff. The *Deuerling, Tolman* and *Chenowith* cases are cited with approval but distinguished on the ground that the enjoining of competition generally over a particular route established by the employer was necessary in order to prevent the unfair use of knowledge of the list of the employer's customers. This necessity was not found to be present in the *Tawney* case because of the wide area and large population over which it was sought to place the restriction and, also, because the small loan business is "a business where the occasional financial need of the customer, rather than the recurrent calls of the supplier, is the prime incentive." [186 *Md.* 508, 47 *A. 2d* 379.]

Plaintiff at bar criticizes the *Tawney* case and suggests that it was decided on an erroneous basis. In the course

of its opinion, the court in the *Tawney* case stated that it had never enjoined competition as a result of a restrictive covenant in an employment contract except in a route case. Plaintiff at bar argues that this was not the fact and that, therefore, the injunction in the *Tawney* case was refused as a result of an erroneous conclusion caused by the court's apparent lack of knowledge of *Griffin v. Guy, supra,* which, it is argued, was an instance of the enjoining of competition in other than a route case.

*Griffin v. Guy, supra,* reversed a refusal to enjoin competition. The facts were that both the plaintiff and defendant were barbers in a small town. The defendant was in financial difficulties in his business and entered into a contract with the plaintiff under which he agreed to work in the plaintiff's shop for a percentage of his earnings, the plaintiff paying off the defendant's obligations. The defendant covenanted not to compete as a barber against the plaintiff. In due course, the defendant left the plaintiff's barber shop and established his own shop in the same community. He was enjoined from so doing.

Plaintiff at bar argues that, since the *Griffin* case is an instance of the enjoining of competition where no route of customers was to be protected, the weight of the decision in the *Tawney* case is considerably affected by the fact that it is based on a misapprehension of what the law of Maryland was as to restrictions on competition after the end of employment where no customer route was involved.

It seems to me that the failure to cite the *Griffin* case does not necessarily weaken the *Tawney* case. Moreover, the *Tawney* case as the latest expression of the highest court of Maryland may not lightly be brushed aside. However erroneous in principle it might be conceived to be, until overruled it is the law of Maryland. I understand that I am to find as a fact and apply that law as it actually is.

However, I do not think the Maryland decisions are

inconsistent one with another. Had the Court of Appeals in the *Tawney* case been familiar with the *Griffin* case, still I believe the result reached would have been the same. I reach this conclusion because I am convinced that Maryland will enforce restrictive covenants in employment contracts only when to refuse to do so would permit the employee to pirate the customers of his former employer by trading upon his good will or utilizing knowledge that came to him exclusively as a result of his former employment. In a sense, the reverse was true in the *Griffin* case. The plaintiff can be said to have purchased the defendant's good will and thus be entitled to have his asset protected. The element of unfairness in competition was present.

From all of the reported Maryland decisions, the rule to be drawn is that, in Maryland, restrictive covenants in employment contracts will be enforced after termination of employment if (1) the contract was a prerequisite of the employment or was supported by consideration, (2) the purpose to be obtained is fair and reasonable, (3) the restriction does not injuriously affect the public, (4) the enforcement of the restriction will not do greater harm to the employee than good to the employer, and (5) the enforcement of the restriction is necessary for the protection of the employer's business. I find as a fact that such is the law of Maryland applicable in this case.

I think the evidence before me fairly supports the conclusion that the first three conditions of the rule have been met by the plaintiff. Conditions numbered (4) and (5) are so related that in reality they are one. Clearly, the enforcement of such restrictions injures the employee, the question, therefore, narrows itself to the determination of necessity for the protection of the employer's business. If such necessity exists in fact, then it overrides the injury to the employee.

It seems clear that there is no necessity to protect the employer's business by the enforcement of such

restrictive covenants unless the employee is utilizing the good will or trade secrets of the employer in order to compete. Competition of this sort is unfair and will be enjoined. An employer may not, however, free himself from legitimate competition by the device of restrictive covenants in employment contracts. Restraints on competition are void, except in the special case where they are necessary in order to prevent the employee from unjustly enriching himself at the expense of his former employer.

The plaintiff is an independent insurance adjuster in the Wilmington territory and, as such, investigates and handles claims for insurance companies which do not have their own claim adjusting facilities in the territory. Referrals of claims for adjustment are made to local independent adjusters by insurance companies without branch offices in the territory; by transients, that is, insureds from other territories who become involved in accidents within the territory; by small insurance companies whose principal place of business is in the territory; and finally, by the local insurance agents. The plaintiff obtains its business from the same sources.

Of the four sources of business, the most important is that of the local insurance agent. Except under special circumstances, the local insurance agent has been given wide latitude by the insurance companies he represents in the selection of an adjusting service for referral purposes. A fair estimate from the record before me is that referrals from local insurance agents account for approximately 80% of the business of an independent adjuster in the Wilmington territory.

In the Wilmington territory the local insurance agents consistently refrain from referring all their claims to one adjuster exclusively. On the contrary, it is the established practice to spread the business among all the independent adjusters in the territory in order to promote a spirit of

competition and thus improve and maintain the quality of service rendered by the adjusters.

The plaintiff charges that the defendant systematically entered upon a course of taking away its customers. It charges that the defendant having been manager of the plaintiff's Wilmington office had created good will among prospective customers for himself and that the entry by the defendant into competition with the plaintiff in the Wilmington territory deprived the plaintiff of the benefit of the good will the defendant had built up for it at its expense.

The facts before me do not support the plaintiff's charges in this respect. It is true that the defendant has had referrals of claims from local insurance agents and insurance companies which, in the past, have referred claims for adjustment to the plaintiff's Wilmington office. It clearly appears, however, that none of the insurance companies or agents referring claims for adjustment to the defendant was at any time the exclusive customer of the plaintiff. With respect to one referral only can this be said not to be the fact, and this one referral I am satisfied represents the exception rather than the rule. Like all independent adjusters in the Wilmington territory, the plaintiff apparently had practically no exclusive customers.

At the present time, there are six independent insurance adjusters in the Wilmington territory, including the parties to this suit. The fair conclusion to be drawn from the testimony is that the entry by the defendant into the field of independent adjusting in his own behalf has had no more damaging effect upon the plaintiff's business in the territory than the entry of any competent adjuster into the field. The record shows that for the past year or so, referrals to the plaintiff's Wilmington office have averaged approximately one hundred a month. The record also shows that since the defendant set up his own adjusting office the average number of referrals per month of the

plaintiff's Wilmington office has remained at one hundred.

██ I do not believe that the independent insurance adjusting business is the type of business which has trade secrets or customers lists, knowledge of which would be of material assistance to a competitor. Particularly is this so in the Wilmington territory where the greatest source of business referrals is the local insurance agents who follow the practice of spreading their referrals among all the independent adjusters in the territory in order to encourage a competitive spirit in the type of service rendered. It seems apparent to me that the success of an adjuster in this territory depends directly on the efficiency of the service he renders.

The case at bar falls within the category of the *Tawney* case. In point of fact, the circumstances of that case would be more compelling for the issuance of an injunction since it was clear that the defendant in that case had taken the employer's business from him in a substantial amount. Such is not the case at bar where the injury, if any, was no more than the plaintiff would probably have suffered from the opening of an independent adjusting office in Wilmington by someone else.

██ I am of the opinion that if this case was in the courts of Maryland, an injunction would be denied on the authority of the *Tawney* case. Having so concluded, since I am to apply the law of Maryland, the injunction prayed for will be denied.

Judgment accordingly.

Note. Reversed on appeal after the date covered by this volume. The opinion of the Supreme Court will appear in 33 *Delaware Chancery Reports.* See 89 *A.* 2d 548.