MUTUAL LOAN COMPANY, a corporation, appellant, v. DONALD C. PIERCE, appellee.

No. 48554.

(Reported in 65 N.W.2d 405)

July 26, 1954.

Shull & Marshall, of Sioux City, for appellant.

Sifford & Wadden, of Sioux City, and George. W. Leamer, of South Sioux City, Nebraska, for appellee.

MULRONEY, J.—Plaintiff, Mutual Loan Company, sought an injunction against its former employee, Donald C. Pierce, to restrain the latter from a violation of the restrictive covenant in the employment contract. The ' employment contract was entered into on March 17, 1952, when defendant entered plaintiff's employ in the city of Sioux City, Iowa. It states that the employer is "engaged in the personal loan and installment finance business in various locations" and the contract makes the term "employer" include a subsidiary corporation. The contract of employment was for one year and thereafter it stood renewed unless one party gave notice to the contrary, but it could be terminated by either party giving the other two weeks notice, and by the employer without notice, by paying one-fourth month's salary to employee.

Paragraph 4 of the contract provides in part as follows:

"Employee covenants and agrees (which covenant is the essence of this contract) that during the life of this contract

and for twelve (12) months from the date he ceases to be in the employ of the employer, regardless of the cause thereof:

"(a) Not to communicate or divulge to or use for the benefit of any person any of the business secrets used by the employer in and about its business, nor will he disclose to any person the methods of conducting the business of the employer or of advertising same or any other information obtained by the employee by virtue of his employment;

"(b) That he will not directly or indirectly, either as principal, partner, agent, employee, stockholder, director, officer or in any other manner or capacity whatsoever, enter into the personal loan or installment finance business or department of a bank or any other business in competition with employer, in any city or town in which he has been working while in the employment of this employer, * * *."

Defendant commenced work for the plaintiff on the date of the contract, working in their headquarters office at 512 Fifth Street in Sioux City, Iowa, at a salary of $225 a month. The contract was silent as to the particular position for which defendant was hired but the vice-president and manager of the company stated defendant was engaged as a "manager-trainee" which he explained meant he would take a training course until "the employee satisfies the executives and supervisors that he is qualified to manage an office." The training course consisted in work in the various departments of plaintiff's business. His first training was what is called the outside work; the work of appraising security at the customer's home, making credit investigation and collecting delinquent accounts. He was then brought into the office where he interviewed customers applying for loans, handled insurance in connection with loans and telephoned delinquent customers and secured credit investigations by telephone. The company manager said "he was taught some of the general functions of the inside workings of the office, and in both cases [outside work and work in the office] he was in contact with a good share of our customers."

His salary was raised until in March 1953 he was being paid $290 a month plus a car allowance. In the early part of March 1953 he was transferred to South Sioux City, Nebraska,

where he worked for the Postal Finance Company, a wholly owned subsidiary of plaintiff, doing about the same inside and outside work that he had done in Sioux City, Iowa, except that here most of his work was inside and he could, on occasions when the manager was absent, close loans. He was transferred back to Mutual's office in Sioux City, Iowa, and his salary increased to $325 a month in July or August 1953. On November 3, 1953, he was discharged without notice—the company paying him one fourth of one month's salary. About a week later defendant entered the employ of Western Finance Company, a personal-loan company, operating in South Sioux City, Nebraska. Defendant testified his position is "collection manager" and he said it is about the same as assistant manager and, "approximately the same that I had when employed by Mutual Loan Company." The defendant is married and has three children, the oldest four, and when he started with Western he was paid $250 a month and at the time of trial his salary was $275 a month, and he was $1200 in debt.

The trial court denied the injunction stating: "* * * the evidence in this case is not such as to warrant the belief that the present employment of defendant endangers the interests of plaintiff. The work of the defendant is of an ordinary kind. Wherefore the restrictive covenant is not of equitable cognizance." Plaintiff appeals.

I. The vice-president and manager of plaintiff-company, plaintiff's only witness, stressed the fact that while defendant was employed by Mutual he had access to customer lists and he learned the company's "secret and unique" method of doing business. He said all of their employees (in excess of one hundred in Sioux City) sign such employment contract as is here involved. The record indicates the information made available to defendant would be available to all of their office employees. But in any event there is no evidence to show defendant divulged or used any of plaintiff's business secrets, and plaintiff admits the only clause of the contract that is involved is 4(b). This clause prohibited defendant from engaging in the personal-loan or installment-finance business as an employee, in competition with Mutual in a city or town in which he worked when he was

with Mutual. He worked in South Sioux City, Nebraska, four or five months out of the twenty months he was with Mutual and he is now engaged in the same work in South Sioux City as an employee for a company in competition with Mutual's wholly owned subsidiary. The sole question in the case is whether the restrictive covenant in this contract will be enforced by the injunction.

■ II. Not all restrictive covenants in hiring contracts will be enforced. The agreement not to engage in a competing business on leaving employment is an agreement in restraint of trade, and it is unenforceable unless reasonably necessary to protect the employer.

The rule announced in 17 C. J. S., Contracts, section 254, is: "Covenants incident to a contract of employment, by which an employee agrees not to * * * engage in competition after the employment, while not viewed with the same indulgence as restrictions incident to a contract of sale, will be sustained if they are no wider than reasonably necessary for the protection of the employer and do not impose undue hardship on the employee."

The general rules governing the enforceability of such contracts in partial restraint of trade are all stated in our opinion in Brecher v. Brown, 235 Iowa 627, 17 N.W.2d 377, with citations to, and quotations from, supporting authorities found in the prior opinions of this court, and decisions of other courts, and text statements in Corpus Juris Secundum and Restatement of the Law of Contracts.

■ It comes down to a question of reasonableness. The restraint will be enforced if reasonably necessary to afford a fair protection to the business interests of the party in favor of whom it is given. It is to be strictly construed and the restriction must be no greater than necessary to protect the interests of the employer. It must not be oppressive to the employee or create undue hardship on him, out of proportion to the benefits which the employer may in reason expect to secure. Brecher v. Brown, supra; Swigert & Howard v. Tilden, 121 Iowa 650, 97 N.W. 82, 63 L. R. A. 608, 100 Am. St. Rep. 374; Haggin v. Derby, 209 Iowa 939, 229 N.W. 257; 17 C. J. S., Contracts, sections 246 and 247; Restatement, Law of Contracts, section

515; Rapalee v. John Malmquist & Son, 165 Iowa 249, 145 N.W. 279.

A study of the law on this subject—and the cases are legion—shows clearly that in such injunction suits equity is in the field of protecting unfair competition. The courts will not enjoin the taking of the new employment merely because it is within the negative restriction. Every man has a right to earn his livelihood in any legitimate employment or business and his covenant not to follow a certain calling cannot be enforced by the covenantor as any sort of penalty. The covenantor who seeks the enforcing injunction in equity has the burden of showing the restrictive covenant is fair and reasonably necessary for the protection of his business.

It is to be expected, when courts are applying a rule of reason, that the limits of enforceability of negative covenants in employment contracts are not sharply outlined. Plaintiff argues in effect that such covenants are enforceable when limited as to time and area; such as here where it was limited to one year and a certain city. That is not quite true, though it is generally held that one that is unlimited as to time or area is unreasonable and unenforceable. See Brecher v. Brown, supra. The length of time and extent of area contained in the covenant will be taken into consideration in appraising the reasonableness of the restriction. Foltz v. Struxness, 168 Kan. 714, 215 P.2d 133. The covenantor's first burden is to show the reasonable necessity for the enforcement of the covenant at all in order to protect its business. John Roane, Inc. v. Tweed, 32 Del. Ch. 90, 96, 80 A.2d 290, 293. He cannot have the covenant enforced to preclude his former employee from exercising general skill and knowledge in the personal-loan business, acquired by his employee while in his service, even if this skill and knowledge will be used in competition to plaintiff's business. See Restatement, Law of Contracts, section 516, comment on clause f. There is nothing unique about the personal-loan business. Plaintiff's witness said there were some ten or twelve of them doing "similar business in Sioux City and South Sioux City" and if you add banks and credit unions there are about eighteen in the small-loan field. As was said in John Roane, Inc. v. Tweed, supra:

"An employer may not, however, free himself from legitimate competition by the device of restrictive covenants in employment contracts. Restraints on competition are void, except in the special case where they are necessary in order to prevent the employee from unjustly enriching himself at the expense of his former employer."

Plaintiff would not be entitled to the injunction without some showing that defendant, when he left plaintiff's employment, pirated or had the chance to pirate part of plaintiff's business; took or had the opportunity of taking some part of the good will of plaintiff's business; or it can reasonably be expected some of the patrons or customers he served while in plaintiff's employment will follow him to the new employment. Practically the only contact defendant had with plaintiff's customers was calling or telephoning the delinquent customers to try to get them to pay up. We can think of nothing less conducive to the building up of a personal following among plaintiff's patrons. The record shows he would occasionally close a loan when he was in South Sioux City, when he was alone in the office during the noon hour or the manager was out of town. Plaintiff and his present employer both testified there is no personal solicitation for loans in their business, the manager saying: "It is not an accepted ethical method of getting loans. We advertise by newspaper and radio." The record shows that neither defendant nor his present employer ever advertised the fact that defendant was a former employee of Mutual in order to get customers.

The record shows this case is readily distinguishable from such cases as Larsen v. Burroughs, 224 Iowa 740, 277 N.W. 463, where a physician, employed by a medical clinic, contracts on termination of his employment he will not practice his profession for a period of years in that locality. And it is distinguishable from Sioux City Night Patrol v. Mathwig, 224 Iowa 748, 277 N.W. 457, where the employee of a company engaged in guarding business houses covenanted not to engage in a similar business for a period of two years after the termination of his employment. The latter case might be called a "route case" for there are many decisions upholding restrictive cov-

enants in employment contracts of employees serving milk routes, or laundry routes, or restrictive covenants in employment contracts of salesmen serving definite routes. In such cases the employee has had a close contact with his employer's customers and it is only fair, on termination of his employment, there be an interval when the new employee will be able to get acquainted with the customers. In such cases it is reasonable to expect some of the employer's customers will follow the employee to the new business.

Plaintiff cites two cases involving restrictive covenants in small-loan-company employment contracts. In Personal Finance Co. of Lincoln v. Hynes, 130 Neb. 547, 265 N.W. 541, the employment contract of the manager of a small-loan business contained a clause about like the one involved here. After his employment he became the active manager of a competitive company. The opinion holds the evidence sustains the conclusion he was released from the restrictive covenant and the injunction was denied. Plaintiff quotes some statements of the general rules found in the opinion, which the court, because of the holding, was not called upon to apply.

The other case is Eigelbach v. Boone Loan and Investment Co., 216 Ky. 69, 71, 287 S.W. 225, 226, which was another case of a general manager breaching the restrictive covenant in his employment contract. Here the former employer obtained the injunction but the opinion indicates the defense was the restrictive clause would not apply unless defendant was discharged, and plaintiff could not maintain the suit because it was engaged in a usurious business. The court held against defendant on the pleaded defenses, and the opinion states: "The contract sued on is fair and no objection is urged to it."

The cited general-manager cases are not much authority for plaintiff's position here with respect to the employment contract of defendant, the greater part of whose services were that of a delinquent account collector. A case more nearly in point is Tawney v. Mutual System of Maryland, Inc., 186 Md. 508, 521, 47 A.2d 372, 379. In this case the court refused to enforce the covenants in the employment contracts entered into by a Baltimore small-loan company with the manager and cashier, requiring them to refrain from engaging directly or

indirectly in any service competing with that of employer in the Baltimore trading area, for a period of two years after termination of their employment.

The opinion distinguished the small-loan-company employee from the route cases where the employee secures a following or clientele among the employer's customers or patrons. As the court stated, the small-loan business is "a business where the occasional financial need of the customer, rather than the recurrent calls of the supplier, is the prime incentive." It is true the decision in the Tawney case seems to be partly based upon the holding that the area (the trading area of Baltimore) was too large, but it is also based on the conclusion that it was not necessary to enforce the restriction in order to protect the good will built up by a small-loan business. See discussion of Tawney opinion in John Roane, Inc. v. Tweed, 32 Del. Ch. 90, 80 A.2d 290.

Under the whole record in this case we are convinced the trial court was right in denying the injunction. Plaintiff failed to make out a case where it can reasonably be said it will be harmed by its competitor because of defendant's new employment. The harm, if any, that plaintiff would suffer by defendant's new employment would be no greater than if Western had hired any other person with twenty months general experience in the small-loan business. The benefit which plaintiff could possibly gain by the enforcement would be trivial and far out of proportion to the hardship to the defendant.

The decision is affirmed.—Affirmed.

All JUSTICES concur.